JOAN DELL, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent ESTATE OF SAUL FIELD, DECEASED, ARTHUR FIELD, ET AL., EXECUTORS and MOLLY FIELD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Joan Dell, Inc. v. Commissioner
Docket Nos. 2098-72, 2099-72.
United States Tax Court
T.C. Memo 1976-356; 1976 Tax Ct. Memo LEXIS 48; 35 T.C.M. (CCH) 1618; T.C.M. (RIA) 760356; November 24, 1976, Filed Richard N. Tilton,Jules Ritholz,BorisKostelanetz and Edward J. Daus, for the petitioners. Stanley J. Goldberg and Peter Matwiczyk, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions under section 6653(b), as follows: [1]
Joan Dell, Inc.
Additions to Tax Taxable Year Ended
Deficiencies
under Sec. 6653(b)
August 31, 1963
$17,501.77
$10,095.87
August 31, 1964
28,170.00
15,456.01
August 31, 1965
43,802.47
21,901.24
August 31, 1966
37,949.22
18,974.61
Estate of Saul Field, Deceased, et al. [2]
December 31, 1963
$13,989.24
$ 7,638.01
December 31, 1964
23,144.11
12,137.80
December 31, 1965
27,535.93
13,767.97
December 31, 1966
4,101.28
2,050.64
*49 The issues remaining for decision are as follows: (1) Whether petitioner, Joan Dell, Inc., understated its gross income for the taxable years ended August 31, 1963, 1964, 1965 and 1966, in the amounts of $33,657.25, $55,598.77, $63,808.15 and $50,196.00, respectively, and if so, whether the statute of limitations bars the assessment and collection of the deficiency and addition to the tax determined by respondent to be due for the taxable year ended August 31, 1963. (2) Whether Saul Field, now deceased, understated his gross income during the calendar years 1963 through 1966, inclusive, in the amounts of $24,172.51, $31,285.00, $31,004.57 and $15,168.00, respectively, and if so, whether the statute of limitations bars the assessment and collection of the deficiency and addition to the tax determined by respondent to be due for the taxable year 1963. (3) Whether any part of the underpayment of taxes for the taxable years involved in this proceeding is *50 due to fraud (within the meaning of section 6653(b)) on the part of petitioner Joan Dell, Inc., or Estate of Saul Field, Deceased, et al. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Joan Dell, Inc. (hereinafter referred to as Joan Dell), was organized as a corporation on September 12, 1943, under the laws of the State of New York. At the time of filing the petition herein, Joan Dell's principal office was at 1400 Broadway, New York, New York. For the taxable years ended August 31, 1963, 1964, 1965 and 1966, Joan Dell filed its U.S. Corporation income tax returns with the District Director of Internal Revenue, Manhattan District, New York. Joan Dell made a general assignment for the benefit of creditors to New York Credit Men's Adjustment Bureau, Inc., 71 West 23rd Street, New York, New York 10010, as assignee, which was accepted on July 27, 1973. Nathan Block and Saul Field each owned 50 percent of the Joan Dell stock during the taxable years in issue. Saul Field died on September 22, 1966, and Nathan Block died on January 14, 1969. Letters *51 Testamentary for the Last Will and Testament of Saul Field were issued to Arthur Field, et al., by the Surrogate's Court of Nassau County, State of New York. At the time of the filing of the petition herein, petitioners in docket No. 2099-72 legally resided at 104 Ursula Drive, Roslyn, New York 11576. Saul and Molly Field's joint income tax returns for the years 1963, 1964 and 1965, were filed with the District Director of Internal Revenue, Brooklyn, New York; and their joint income tax return for the taxable year 1966 was filed with the District Director of Internal Revenue, Manhattan District, New York. During the years in issue, Joan Dell was engaged in the business of selling dresses which it manufactured. Joan Dell purchased fabrics from their suppliers and shipped them to contractors who would cut and sew the dresses. During this same period of time, Spechler-Vogel was a partnership of Paul Spechler and Alvin Vogel engaged in the business of being textile jobbers and wholesalers. During the years involved in this proceeding, Spechler-Vogel regularly inserted an advertisement in Women'sWearDaily offering to purchase piece goods for "spot cash". During *52 the years in issue, Joan Dell purchased Serrano and Twinella fabrics from its suppliers. Serrano is the brand name for a linenlike fabric manufactured by Shirley Fabrics Corporation. Twinella is the brand name for a double-knit woolen fabric manufactured by William Heller, Inc. Joan Dell deducted the cost of these goods on its corporate return under the inventory method of accounting. Usually Shirley Fabrics Corporation shipped its orders of Serrano directly from its warehouse to Joan Dell. William Heller, Inc., shipped its orders of Twinella from its mills in Rhode Island by means of Milton Feinburg Trucking Company for delivery to Joan Dell. However, during the years involved in this proceeding, at the request of Nathan Block and/or Saul Field, some of Joan Dell's orders at Shirley Fabrics Corporation's warehouse and Milton Feinburg Trucking Company, were marked "hold for Main" or "for Main". The orders so marked were not delivered to Joan Dell, but were set aside, and picked up by Textile Truckers for Spechler-Vogel. Spechler-Vogel did not purchase any fabric directly from the makers of Serrano or Twinella. Spechler-Vogel did, however, sell Serrano and a woolen fabric *53 to its customers. On the respective dates set forth below, invoices indicate Spechler-Vogel sold Serrano to its customers that corresponds nearly exactly to the yardages of Serrano purchased by Joan Dell from Shirley Fabrics Corporation on the dates noted. Purchased by Joan Dell
Sold by Spechler-Vogel Date
Yards
Price
Date
Yards
Price
12/16/64
1,675
$1,130.63
12/18/64
1,675 2/8
$1,105.67
2/09/65
2,136 5/8
1,442.22
2/10/65
2,136 5/8
1,410.17
4/21/65
1,365
921.38
4/28/65
1,365
900.90
10/12/65
2,761 7/8
1,864.27
10/13/65
2,761 7/8
1,822.84
10/18/65
2,748 4/8
1,855.24
10/19/65
2,748 4/8
1,814.01
12/28/65
3,239 2/8
2,186.49
12/30/65
3,239 2/8
2,137.91
1/27/66
2,575 1/8
1,738.21
1/31/66
2,575 1/8
1,699.58
7/06/66
1,027 6/8
714.43
7/11/66
1,027 6/8
693.73
On the respective dates below, invoices indicate Spechler-Vogel sold "woolen" material to its customer that corresponds nearly exactly in the yardages, number of pieces and colors of Twinella, a double-knit woolen material, purchased by Joan Dell from William Heller, Inc., on the dates noted. Purchased by Joan Dell
Sold by Spechler-Vogel Date
Yards
Price
Date
Yards
Price
7/08/63
157 7/8
$ 568.35)
7/08/63
612 7/8
2,206.35)
7/08/63
73 6/8
265.50)
7/09/63
1,046 1/8
$3,556.83
7/08/63
201 5/8
725.85)
7/10/63
406 3/8
1,462.95
7/11/63
406 3/8
1,381.68
7/24/63
128 5/8
463.05)
7/25/63
121 2/8
436.50)
7/30/63
640 2/8
2,176.85
7/29/63
201 7/8
726.75)
8/12/63
206 7/8
744.75
8/14/63
206 7/8
693.18
8/21/63
511 6/8
1,842.30
8/22/63
511 6/8
1,739.95
8/28/63
465 6/8
1,676.70
8/29/63
465 6/8
1,583.55
9/09/63
227 7/8
824.26
9/11/63
196 7/8
708.75
9/12/63
424 6/8
1,444.15
9/20/63
41 2/8
148.50)
9/23/63
496 3/8
1,786.95)
9/24/63
730
2,482.00
9/23/63
192 3/8
692.55)
8/25/64
802 7/8
3,091.07
8/27/64
802 1/8
2,978.92
10/07/64
240 7/8
927.37
10/09/64
240 6/8
896.79
8/24/65
517 7/8
1,967.93
8/25/65
517 7/8
1,864.35
10/26/65
614 7/8
2,336.05
10/29/65
614 6/8
2,243.84
*54 Spechler-Vogel purchased the fabrics at a price lower than the list price and sold it to its customer at a profit, but still less than the customer would have had to pay purchasing the fabric directly from Shirley Fabrics Corporation or William Heller, Inc. Joan Dell did not record these sales and did not report them in their gross income on their corporate returns during the years in issue. The books and records of Spechler-Vogel, which were once in the possession of the respondent, were destroyed by Spechler-Vogel. It could not be determined whether their books and records reflected the purchase of any fabric from Joan Dell. Spechler-Vogel wrote checks payable to cash on their account at the Chemical Bank New York Trust Company totaling $203,260.17 during the years in issue. Respondent determined that during the taxable years ended August 31, 1963 to 1966, inclusive, Joan Dell made cash sales of Serrano and Twinella to Spechler-Vogel amounting to $203,260.17, which were not reported on the books and records of Joan Dell and were not reported as gross income on its Federal income tax returns. Respondent determined that during the taxable years 1963 to 1966, inclusive, *55 Saul Field, now deceased, as co-owner of the stock of Joan Dell, received as dividends a total of $101,630.08 on account of unrecorded sales by Joan Dell to Spechler-Vogel which was not reported on the individual income tax returns filed jointly by Saul Field and Molly Field. Respondent further determined that petitioners Joan Dell, Inc., and Estate of Saul Field, Deceased, et al., are liable for the additions to the taxes for fraud, pursuant to section 6653(b) in all taxable years. During the taxable years involved in this proceeding, Joan Dell received a total of $203,260.17 from the sale of fabrics to Spechler-Vogel which was not reflected on their books and records and was not reported as gross income on its Federal income tax return, in the following amounts: Taxable year ended
Amount
August 31, 1963
$ 33,657.25
August 31, 1964
55,598.77
August 31, 1965
63,808.15
August 31, 1966
50,196.00
Total
$203,260.17
Joan Dell fraudulently and with the intent to evade tax omitted these cash sales from its corporate income tax returns for the taxable years ended August 31, 1963 to 1966, inclusive. During the taxable years involved in this proceeding, *56 Saul Field, now deceased, received as dividends from Joan Dell a total of $101,630.08 from the unrecorded sales by Joan Dell to Spechler-Vogel, which was not reported in the Federal income tax return filed by Saul Field and Molly Field, jointly. This amount is made up of the following: Taxable year
Amount
1963
$ 24,172.51
1964
31,285.00
1965
31,004.57
1966
15,168.00
Total
$101,630.08
Saul Field, fraudulently and with the intent to evade tax omitted these dividends from Joan Dell from his joint income tax returns for all the years in issue. OPINION Joan Dell was engaged in the business of manufacturing and selling dresses. During the years in issue, Joan Dell purchased Serrano and Twinella fabrics from its suppliers and Spechler-Vogel sold the same fabrics or fabrics of the same description and similar yardage to its customers. Spechler-Vogel did not purchase any fabrics from the mills that manufactured Serrano or Twinella. Joan Dell's books and records do not reflect any income from the sale of the fabrics to Spechler-Vogel. Joan Dell received a cost of goods sold deduction in computing gross profit for the purchase of textiles, thereby reducing *57 its corporate income tax liability for the years involved. Spechler-Vogel's books and records have been destroyed. Respondent determined Joan Dell failed to report income from the sale of textiles during the taxable years ended August 31, 1963 to 1966, inclusive, in the amount of $203,260.17, of which Saul Field as a co-owner of the stock of Joan Dell personally received one-half as dividends. Respondent would tax these amounts to petitioner Saul Field's widow as a dividend. Petitioners contend that the cash transactions claimed by respondent to have taken place between Joan Dell and Spechler-Vogel never occurred. The record does not support petitioners' contention. To support their claim that unreported cash sales took place between Joan Dell and Spechler-Vogel, respondent presented copies of actual invoices showing the purchase of fabrics by Joan Dell from their suppliers, identical in type, and in most instances, identical in yardages and color to fabrics sold a few days later by Spechler-Vogel. The foreman of the trucking company that delivered William Heller, Inc.'s fabrics during the years in issue, testified that orders were normally delivered to Joan Dell's office; *58 but in some instances, the destination slips on Joan Dell's orders were marked with the code, "hold for Main" or "for Main". He testified that Nathan Block himself changed some of the destination slips from Joan Dell to "for Main"; that Nathan Block instructed the foreman that orders so marked should be segregated from the other Joan Dell orders and would be picked up by a delivery truck; and that Textile Trucking, the trucking company used by Spechler-Vogel, always picked up the orders. A similar procedure was utilized at the Shirley Fabrics Corporation warehouse at Saul Field's instructions. Certain orders would be marked "hold for Main", segregated from the other Joan Dell orders and picked up by Textile Trucking. These pick up and delivery arrangements, coupled with the fact that the invoices indicate the purchases of Joan Dell correspond exactly to the types of fabrics and, in most instances, identical to the colors and yardages of fabrics that Spechler-Vogel sold to its customers a few days later, lead inescapably to the conclusion that the fabrics Spechler-Vogel sold were the same fabrics that Joan Dell purchased from Shirley Fabrics Corporation and William Heller, Inc. *59 Both Paul Spechler and Alvin Vogel were called as witnesses by respondent and testified that they purchased Serrano and Twinella fabrics from Joan Dell. Both men further testified that they paid for this fabric in cash because both Saul Field and Nathan Block insisted on cash payments. Petitioners objected to the admission of this testimony on the grounds that it was inadmissible under section 4519 of New York Civil Practice Law and Rules, New York's "Dead Man Statute". N.Y. Civ. Prac. sec. 4519 (McKinney 1963). The admission of Spechler and Vogel's testimony is not governed by section 4519 of New York Civil Practice Law and Rules. The Federal Rules of Evidence govern this trial. [Section 7453; Rule 143(a), Tax Court Rules of Practice and Procedure]. Rule 601 of the Federal Rules of Evidence, provides as follows: Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law. Since the *60 rule of decision in this case is governed by Federal law, and not New York State law, Spechler and Vogel's competence to testify must be judged by Federal law rather than New York law. The Court would, however, be disinclined to give much weight to the testimony of Spechler and Vogel, even though admissible, unless corroborated by more objective proof. It is not necessary to rely on such testimony to find that Joan Dell sold fabric to Spechler-Vogel for cash, which Joan Dell did not reflect in its books and records on report on its corporate income tax returns during the years in issue. Actual invoices were presented showing that goods of the identical description were purchased by Joan Dell a few days prior to each sale of Spechler-Vogel. Furthermore, the foreman of the trucking company that delivered the goods for the manufacturer of Twinella, a disinterested witness, testified that orders that were purchased by Joan Dell were specially marked, set aside, and picked up by Spechler-Vogel's trucking company. When coupled with such evidence, the testimony of Spechler and Vogel was at most, merely corroborative. For the taxable year ended August 31, 1963, in the case of Joan *61 Dell, and the taxable year 1963 in the case of Estate of Saul Field, any assessment is barred in the absence of fraud.With respect to the issue of fraud, the burden of proof is on the respondent, and such proof must be clear and convincing. Section 7454(a); Kreps v. Commissioner,351 F.2d 1 (2nd Cir. 1965), affg. 42 T.C. 660 (1964); Rule 142, Tax Court Rules of Practice and Procedure.
For the other years involved in this proceeding, the burden of proof is on the taxpayer to overcome the presumption of correctness attached to respondent's determination. Welch v. Helvering,290 U.S. 111 (1933). No evidence was presented by either petitioner to explain, rebut or otherwise account for the matching invoices and the testimony of the driver. Since both petitioners have failed to meet their burden of proof, the Court must sustain respondent on the deficiencies relating to the unreported sales of textiles as set forth in the notice of deficiency for those years. The Court has found that respondent affirmatively established fraud with an intent to evade taxes on the part of Joan Dell in not reporting any portion of the proceeds of the *62 sales from Spechler-Vogel on its Federal income tax returns for all years in issue, and on the part of Saul Field, now deceased, in omitting from his Federal income tax returns for the years 1963 to 1966, inclusive, dividend income received from Joan Dell as a result of the unreported sales to Spechler-Vogel. Joan Dell's two principals insisted on cash; the income from the sales was omitted from Joan Dell's corporate and Saul Field's individual Federal income tax returns; and they were secretive about their sales, using the code name "Main" to identify the account. All of these affirmative acts were deliberate and the likely effect of their conduct is to mislead or conceal the wrongdoing. Those acts are primafacie fraudulent. Spies v. United States,317 U.S. 492 (1943). Since the Court has found that omissions of income for all the years in issue against both petitioners are due to fraud, section 6501(c)(1) is applicable and the statute of limitations does not bar the assessment and collection of the deficiencies in tax and the additions to the tax determined by respondent to be due from Joan Dell, Inc., for the taxable year ended August 31, 1963, and *63 Estate of Saul Field, Deceased, et al., for the taxable year 1963. Decisions will be entered pursuant to Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954. ↩
2. The liability of Molly Field is limited to the amounts of the deficiencies in the taxable years 1964, 1965 and 1966.↩